Catkon, Ch. J.
delivered the opinion of the court.
As complainant comes in to enforce the equity of *170 R* Raines, it will be useful to inquire what relief Raines is entitled to by the general powers of the court; for we must take it) the legislature provided a lien in favor of builders with a view to the doctrine applicable to a Court of Equity, and that the well settled principles governing the rights of venders and purchasers, and the powers of the court specifically to decree the performance of contracts, was not overlooked.
If a contract has been entered into for the sale and purchase of land, by competent parties, and is in its nature, and the circumstances of it unobjectionable, it is as much in the course of the court to enforce it, as it is to give damages at law. 9 Ves. 608: 1 Mad. 287. Long before Gillespie built for Raines, Bradford’s lien existed. This lien he had a right to enforce by bill, causing the premises to be sold for the unpaid purchase monejr, regardless of-appreciation, or depreciation of value at the date of the sale. This is the established doctrine and practice in Equity, in this State. Nor is a case recollected, since the English Court of Chancery first assumed jurisdiction, by bill and subpoena, to enforce contracts for the sale of land in specie, where the vendor was deprived of his legal title without having received the purchase money. Here Gillespie comes in on Raines’ equity, and asks a specific decree on behalf of the vendee, to which the vendor submits, on being paid the price of the land, and until which is done, by the terms of the contract, as well as the settled law of the court, the contract cannot be enforced. 3d Atkins, 188.— Has the legislature altered the law? Was it intended to put it into the power of an extravagant vendee to erect improvements on the land, that would cost more than it was worth thus improved, and give the builder a lien for the improvements, superior to that of the vendor, and destructive to his older equity? If so, the statute must be most explicit to this effect.
The statute of 1825 makes the substantive provision *171 on the subject. It provides, that, hereafter, when mechanics construct buildings upon any lot of ground in any town by special contract with the owners thereof, they shall have and possess a lien upon each building and the lot of ground thereto attached, not exceeding one acre, for the just value of his labor, and materials furnished by such mechanic for constructing such house or houses; and the owner of such ground shall not be able to convey the same free from the said lien created by this act, nor shall the s'ame be sold by legal process so as to avoid said lien, unless judgment is rendered before such building was commenced.”
By the second section, the lien is to continue one year after the building is completed, and until after the termin-nation of any suit that may be brought to establish the purchasers claim. This act only extended to cases where one person uudertook the whole building. The act of 1829 amends that of 1825, and extends the line separately to each person who may do part of the work or furnish part of the materials. This statute seems too plain for serious doubt to arise on its construction. Yet such doubts have arisen, and the Chancellor’s decree has been appealed from, and the determination of this court required. We think the statute has reference to the existing title of him who has the building erected, such as it was when the improvement commenced. The mechanic’s lien will hold good against a subsequent purchaser from the person who builds, and against a lien by a subsequent judgment against him, but has no reference to previous liens for purchase money unpaid by mortgage or judgment. The decree will be affirmed with costs.
Decree affirmed.